monly referred to as the custom seat cover business. Plaintiff carries no stock of seat covers and only cuts and installs the desired material upon order of the customer. However, plaintiff does carry a varied stock of material. After the customer chooses his desired material from the stock, plaintiff places it on the seats and backrests of the customer's car, marks the material, then removes the material from the car and it is cut to fit. The cut material is then sewn together and fastened to the seats and backrests of the automobile.

3. Defendant on and after October 1952 assessed an excise tax on all seat covers so made by the plaintiff. This was the manufacturer's tax on automobile accessories sold by the manufacturer under Section 3403(c), Title 26, U.S.C.A., Int.Rev.Code 1939. Plaintiff paid a total of $4,392.33 from the period October 1952 through October 1954, and thereafter filed claim for refund. The refund having been denied, plaintiff brings this action.

4. Plaintiff contends that it is not a manufacturer of automobile accessories within the meaning of Title 26, Section 3403(c), U.S.C.A., of the Internal Revenue Code, 1939. It is its position that it sells seat cover materials and merely performs the labor of installing that material on the automobile of its customers.

5. It is my opinion that the plaintiff is not a manufacturer within the meaning of Section 3403(c), supra.

### Conclusions of Law

1. Sales of seat covers in the instant case are sales of labor and material and not sales of seat covers as accessories.

2. It was not the intent and purpose of Congress to classify the plaintiff as a manufacturer and as further evidenced by the ruling of the Internal Revenue Bureau which was in effect for 17 years from 1953 (ST824, CB December 1935, page 368).

3. On the 16th day of June, 1954, before the Hon. John W. Holland presiding, this Court in a case involving the same parties, 123 F.Supp. 400, and the same facts as the instant case, the Court found that the plaintiff's sales of seat covers were sales of labor and material and not sales of seat covers as accessories, and after having heard the testimony in this case, I find no valid reason for disturbing this ruling.

It is my opinion that the work done by the plaintiff does not come within the meaning of Section 3403(c), supra, and consequently the plaintiff is not a manufacturer of auto accessories within the meaning of the statute.

Judgment for the plaintiff in the sum of $4,392.33 will be granted upon the presentation of appropriate order.

Wesley K. **ROBERTS** and The Bank of California, N. A., Executors of the Estate of William Roberts, Deceased,

v.

The **UNITED STATES.**

No. 58–53.

United States Court of Claims.
June 5, 1957.

Frank L. Mechem; Seattle, Wash.; George F. Kachlein, Jr., and Bogle, Bogle

& Gates, Seattle, Wash., on the briefs, for plaintiffs.

Elizabeth B. Davis, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., Andrew D. Sharpe, Ellis N. Slack, and Leland T. Atherton, Washington, D. C., on the briefs, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This case is before the court on plaintiffs' motion for rehearing. Upon consideration thereof, it is ordered that the former judgment dismissing plaintiffs' petition and the conclusion of law be and the same hereby are vacated, and the former opinion and dissenting opinion by Judge Madden of March 6, 1957 are withdrawn, and the following opinion and the resultant conclusion of law are substituted therefor.

Plaintiffs are the executors of the estate of William Roberts, deceased, who died on November 30, 1944. On February 7, 1928, 16 years before his death, decedent created a trust for the benefit of his children. The executors, in making the estate tax return, did not include the corpus of the trust in decedent's gross estate. The Commissioner of Internal Revenue determined that it should be included, and asserted a deficiency in estate taxes.

The Commissioner of Internal Revenue said it should be included for two reasons: first, because it was made in contemplation of death; and, second, because by operation of law there was a possibility that the corpus would revert to the decedent's estate.

Plaintiffs appealed to the Tax Court of the United States. While the case was there pending, the parties entered into a compromise agreement to pay $20,000 in settlement of the asserted deficiency of $108,434.58. The agreement was approved by the Tax Court, which, on May 25, 1948, entered its determination accordingly.

Plaintiffs now sue to recover the amount paid, alleging that it was paid in settlement alone of the reverter issue, and, hence, they are entitled to recover because of the provisions of section 7 of the Technical Changes Act of October 25, 1949, 63 Stat. 891, 894. This section amended section 811(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(c), which provided for the inclusion within the gross estate of transfers in contemplation of death and of those taking effect at death. Section 7 provided for the exclusion from the gross estate of property transferred in trust, where the possibility of its reverting to the estate of the transferor arose only by operation of law.

If the payment was made in settlement of the reverter issue alone, plaintiffs would be entitled to recover it under section 7, because its provisions were applicable to the transfer in question, the section having been made retroactive. There is no dispute about this. The issue is whether all of it was paid in settlement of this issue, and, if only a part of it, then how much.

In the former opinion, the majority said the sum paid was in settlement of both issues, as indeed it was, and that it was impossible to say how much was paid and accepted in settlement of each. We said, although plaintiffs may have regarded the reverter issue as the only serious one, still, the Commissioner of Internal Revenue perhaps regarded this issue as insignificant and the contemplation of death issue as the stronger of the two. Hence, we said it was impossible to make any allocation of the payment to each of the issues.

There seems to be but little doubt that the inducement to plaintiffs to settle the case was primarily the reverter issue, and we now think that the Commissioner of Internal Revenue must have regarded this as a substantial issue. If this is true, then it would be unjust to deny plaintiffs any recovery at all, notwithstanding the impossibility of determining with any accuracy haw much of the payment should be allocated to this issue.

Let us consider the facts to see if the settlement of the reverter issue must have been in the minds of both parties.

At the time of the compromise the regulations of the Bureau of Internal Revenue provided for the exclusion from the gross estate of property where a remote possibility of its reversion to the decedent arose only by operation of law. However, the 7th Circuit Court of Appeals had recently held to the contrary in the case of Commissioner of Internal Revenue v. Spiegel, 159 F.2d 257. There was, therefore, at least a likelihood that the property might be held to be includible, although certiorari to review this decision had been granted by the Supreme Court.

Certainly this issue was not to be disregarded by the Commissioner of Internal Revenue. Indeed, the Chief Counsel of the Technical Staff stated to plaintiffs that if the reverter issue could be settled, he did not think there would be any trouble about the contemplation of death issue. On the other hand, another representative of the Commissioner of Internal Revenue participating in the settlement expressed the opinion that the Government could not win on the reverter issue, but could not concede the contemplation of death issue.

Although there was this divergence of opinion between them, we must conclude that the Government's representatives attached some weight to the reverter issue. As a matter of fact, the Supreme Court, after the compromise had been concluded, affirmed the 7th Circuit Court of Appeals in the Spiegel case, supra, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330, holding that on account of the possibility of the reverter issue, such property should be included.

The conclusion that they did attach some weight to this issue is buttressed by the fact that the testimony shows, in our opinion that the Government's case on the contemplation of death issue was weak. In findings 19, 20, 21 and 22 the

trial commissioner found the following facts, which findings we have adopted:

19. The decedent was born July 11, 1856. He was therefore 71 years of age when he executed the trust instrument referred to in finding 2, and 88 years of age at the time of his death.

20. Prior to 1944, the year of his death, and including 1928, the year when he executed the trust instrument referred to above, the decedent had enjoyed good health, not having had a serious illness or physical impairment during that entire period. He was generally mentally keen and alert throughout that period.

21. The decedent was engaged in carrying on substantial business activities in and prior to 1928 and until his retirement in 1931, including his duties as executive vice president and treasurer of the Continental Casualty Company. In his spare time, prior to and after retirement, he engaged in various arduous physical activities, including carpentry, golf, hiking, camping, and mountain climbing.

22. The decedent was a very reticent type of individual. He never mentioned to his children the thought of death or its consequences in connection with the 1928 trust or otherwise. However, on occasions subsequent to its creation, he did mention to at least some of his children that his reason for creating the trust was to provide security for them in the event of incapacity or old age, and also to effect a possible tax saving presently and in the future which would result from the splitting of income-producing property with his children. In addition, he explained an emergency feature of the trust authorizing the trustee to make disbursements from the trust to any of the beneficiaries as their needs might dictate.

In view of all the facts, the trial commissioner concluded:

A reasonable conclusion from the evidence is that of the $20,000 paid in the settlement of the case before the Tax Court, as heretofore described, $16,000 represents the portion of such payment attributable to the inclusion in the decedent's gross estate of property with respect to which the decedent had a possibility of reverter by operation of law.

There is much justification for the trial commissioner's conclusion, but, in view of the divergent opinions in the office of the Commissioner of Internal Revenue, on the one hand, and, on the other hand, the fact that the contemplation of death issue was a real one, the settlor having been 71 years of age when the trust was created, we are not willing to ascribe only 20 per cent of the settlement to that issue. At least one of the representatives of the Commissioner of Internal Revenue, who was handling the offer in compromise, thought this issue the only one on which the Government could win. Nor could the plaintiffs disregard it as a genuine issue, and they did not do so in presenting their case to the Bureau.

We think the nearest we can approach justice to both parties is to ascribe the payment one-half to one issue and one-half to the other.

The Government says that because the plaintiff resorted to the Tax Court, and that court rendered a judgment in the case, they cannot sue in this court for the refund of the taxes adjudicated by the Tax Court to be owing. That is, of course, the usual rule. But subsection (c) of section 7, 26 U.S.C.A. § 811 note is specific that even if refund would otherwise be prevented by existing law, refund should nevertheless be made, except in two named situations not here relevant. The fact that the Tax Court had made a determination, exactly in accord with the Supreme Court's interpretation of section 811(c) before the enactment of section 7, would be no reason why the taxpayer who was required by that decision to pay a tax on a possibility of reverter should be treated differently from all other taxpayers, and denied the benefit of the retroactive change in the law.

Plaintiffs' motion is granted. Plaintiffs are entitled to recover eleven thou-

sand three hundred eighty-six dollars and sixty-four cents ($11,386.64), with interest as provided by law. Judgment will be entered to that effect.

It is so ordered.

JONES, Chief Judge, and MADDEN, and LITTLETON, Judges, concur.

LARAMORE, Judge, dissents on the basis of his dissenting opinion entered in this case on March 6, 1957, reading as follows:

I respectfully dissent for the reason that I believe the contemplation of death issue was conceded by the Government, after being furnished with the requested affidavits. Thereafter, that issue did not enter into the negotiations and was not a part of the stipulated judgment. Therefore, since the sole issue upon which the stipulation was based was the possibility of reverter, under the Technical Changes Act plaintiffs should be entitled to recover the full amount.

**Maria Dolores Mooers HEATER and Claude L. Heater**

v.

**The UNITED STATES.**

**No. 49980.**

United States Court of Claims.

June 5, 1957.

Carl L. Bauersfeld, Washington, D. C., Robert Ash, Washington, D. C., Whitfield J. Collins, Gillis A. Johnson, Ira Butler, Cantey, Hanger, Johnson, Scarborough & Gooch, Ft. Worth, Tex., on the briefs, for plaintiffs.

Elizabeth B. Davis, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., Andrew F. Oehmann and James P. Garland, Washington, D. C., on the briefs, for defendant.